UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 9:18-CV-80661-RLR

OSVALDO DOMINGO CEBALLO,

    Movant,

vs.

UNITED STATES OF AMERICA,

    Defendant.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART
AND DECLINING TO ADOPT IN PART; DENYING AMENDED MOTION TO
VACATE, SET ASIDE, OR CORRECT SENTENCE; AND CLOSING CASE**

**I.   INTRODUCTION**

This matter is before the Court on Movant Osvaldo Domingo Ceballo's ("Movant") Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Motion") [DE 7]. On February 4 and 5, 2020, Magistrate Judge Lisette M. Reid held an evidentiary hearing. On February 11, 2021, the Magistrate Judge entered the Report of Magistrate Judge ("R&R"), wherein she recommended that Movant's Motion be dismissed as untimely, and alternatively, denied on the merits. DE 55. Movant filed objections to the R&R [DE 58] and the Government filed a response to Movant's objections [DE 59]. The Court has considered the R&R, Movant's objections, the Government's response, and the record, and is otherwise advised in the premises. For the reasons below, the Court declines to adopt the R&R's recommendation to dismiss the Motion as untimely but adopts the recommendation that the Motion be denied on the merits.

1

## II. DISCUSSION

a. *Timeliness*

Before evaluating the merits of the Motion, the Magistrate Judge considered whether the Motion was timely pursuant to 28 U.S.C. § 2255(f). A one-year limitation period applies to a motion brought under 28 U.S.C. § 2255(f), running from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In her R&R, the Magistrate Judge concluded that pursuant to § 2255(f)(4), the limitation period began running in February 2017. DE 55 at 10. That month, Movant's daughter, Stephanie Ceballo Monico ("Monico"), learned from her grandmother that Movant's trial counsel, Richard Diaz ("Diaz"), had once represented Jose Sigler ("Sigler"), who was a co-defendant in Movant's criminal case. *Id.* at 9. Sigler pled guilty in the criminal proceedings and testified against Movant at trial. *Id.* at 4.[1] Also in February 2017, after learning about the possible conflict, Monico hired an attorney, Joseph Rosenbaum, to investigate Diaz's alleged conflict of interest. *Id.* at 9. The Magistrate Judge thus concluded that the evidence of the conflict became "reasonably available"

---

[1] Movant was ultimately found guilty at trial of conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1)-(b)(1)(A)(iii), 846, and 18 U.S.C. § 2 (Count 1), and possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 2). *Id.* at 3. Movant was originally sentenced to 216 months in prison, but that was later reduced to 168 months. DE 7 at 1.

in February 2017 and that Movant had until February 2018 to file his Motion. *Id.* at 10. Because Movant filed his Motion in May 2018, the Magistrate Judge recommended that it be dismissed as untimely. *Id.*

Movant argues that the Magistrate Judge erred in concluding that the one-year limitation period began in February 2017. DE 58 at 2-7. In February 2017, the conflict was merely a "vague rumor without any confirmation or specificity." *Id.* at 3. Almost immediately, Monico engaged Rosenbaum to confirm that the conflict existed, and Rosenbaum hired a private investigator. *Id.* at 3-4. Despite those efforts, neither Rosenbaum nor the private investigator found any record of the conflict, in part because the case file for the matter in which Diaz represented Sigler had been scrubbed by the Broward Circuit Court. *Id.* at 3. Nor did Diaz's name appear on the docket sheet for the case. *Id.* at 5. When asked by Rosenbaum if he had ever represented Sigler before, even Diaz himself did not recall doing so. *Id.* at 5. Only when Monico approached Sigler's family in October 2017 did she finally obtain record evidence of Diaz representing Sigler. *Id.* at 6.

The Government responds that Movant has not described his due diligence in discovering the factual predicate of the claims. DE 59 at 4-5. Moreover, despite his knowledge that the one-year limitation period lapsed in February 2018, and despite his possession of record evidence of the past representation in October 2017, Movant failed to file his Motion between October 2017 and February 2018. *Id.* at 8. The circumstances illustrate, according to the Government, that the Movant failed to exercise due diligence even after discovering the evidence underlying his claim. *Id.* The Magistrate Judge thus correctly found that Movant had the resources and knowledge to obtain record evidence in February 2017. *Id.*

Pursuant to § 2254(f)(4), the one-year limitations period begins to run from "the date on which the facts supporting the claim or claims presented could have been discovered through the

3

exercise of due diligence." 28 U.S.C. § 2255(f)(4). If a movant exercised due diligence, "the limitations period begins to run on the date he actually discovered the relevant facts." *Lanier v. United States*, 769 F. App'x 847, 849 (11th Cir. 2019) (per curiam). If a movant did not exercise diligence, "a court is required to speculate about the date on which the relevant facts could have been discovered." *Id.* Here, Movant has not offered evidence proving that he exercised due diligence himself. Movant's testimony at the February 4, 2020 hearing instead suggests that his family members conducted all due diligence for him. *See* DE 52 at 14 ("[Movant]: I was limited, I was in prison, so my family handled everything for me outside."). Indeed, among other efforts, Monico hired Rosenbaum to represent Movant, and Monico contacted the Sigler family in October 2017 to obtain evidence that Diaz had represented Sigler. As such, the Magistrate Judge correctly found that Movant did not present evidence that he exercised due diligence himself.

The Court must therefore speculate about the date on which the relevant facts underlying Movant's claims were discoverable through due diligence. The phrase "due diligence" in § 2255(f)(4) does not mean or require "maximum feasible diligence," but instead requires Movant "to make reasonable efforts." *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002). "Moreover, the due diligence inquiry is an individualized one that must take into account the conditions of confinement and the reality of the prison system." *Id.* (quotation marks omitted).

The issue presented is whether, using reasonable diligence, Movant could have discovered the facts underlying his claims by May 8, 2017. The Court has undertaken a thorough review of the record to evaluate this matter, including the transcripts of the evidentiary hearings held on February 4 and 5, 2020. The Court concludes that through reasonable diligence, the conflict of interest was not discoverable until after that date. Movant's objections, along with the transcripts from the evidentiary hearing, reveal the significant difficulty in confirming whether Diaz

previously represented Sigler. It is undisputed that Movant's daughter, Monico, first learned of the conflict of interest from her grandmother in February 2017. Monico's grandmother became aware of the conflict when Jose Sigler's half-brother, Amado Egued ("Amado"), called her to convey the information. DE 55 at 7. Monico hired Rosenbaum in February 2017 [*id.*], who then hired a private investigator [*id.*], but neither individual could locate evidence of the conflict of interest. *See* DE 52 at 14 (Movant states that "they couldn't come up with anything"). This was in part because, pursuant to Florida Statute § 119.041, the Broward County Clerk's Office had disposed of the case file after retaining it for the requisite length of time. DE 17-8 at 2. The docket sheet did not even list Diaz as Sigler's attorney. *See* DE 17-9. In its response to Movant's objections, the Government also admits that "[a]fter learning that attorney Rosenbaum had been unable to confirm the representation on February 28, 2017, attorney Rosenbaum was advised that Amado Egued would not cooperate." DE 59 at 8. Notably, Diaz himself could not recall representing Sigler when asked by Rosenbaum. DE 52 at 16 ("[Movant:] [Rosenbaum] couldn't come up with anything. He actually told me that he had even gone to Mr. Diaz's office to ask himself, and he said 'No, he never represented Sigler, in no case.'"). Not until October 2017, when Monico contacted Sigler's family, was there written proof that Diaz represented Sigler in a forfeiture action more than a decade prior. *Id.* at 14-15.

The foregoing illustrates that the Magistrate Judge may have imposed too high a standard when concluding that the relevant evidence was discoverable through reasonable diligence as of February 2017. At that time, the alleged conflict was unsubstantiated based on Monico's grandmother's phone call with Amado. It arguably was premature to file a § 2255 motion based merely on that conversation. Despite the efforts of Rosenbaum and the private investigator, neither was able to uncover written proof. Nor could they rely on Amado, who was unwilling to cooperate.

Complicating matters further, Diaz himself did not recall representing Sigler, and the Broward County Clerk's Office had already purged the relevant case file. In light of these circumstances, the Court concludes that the evidence underlying Movant's claims was not discoverable through reasonable diligence until after May 8, 2017. The Motion was thus timely filed under § 2255(f)(4), and the Court declines to adopt the Magistrate Judge's recommendation that it be dismissed as untimely.

      b. *Ground One*

In Ground One, Movant argues that Diaz violated his Sixth Amendment right to counsel when he advised Movant in October or November 2013 to go to trial rather than accept the Government's offer of 57 months' imprisonment if he pled guilty to the conspiracy charge. DE 7 at 4. Movant alleges that Diaz "insisted [that] the government had no case and movant should go to trial because the only adverse evidence was testimony by Jose Sigler whom Diaz would nullify at trial." *Id.* Movant says that he "would have accepted the plea if he knew that Diaz, burdened by a conflict, could not fully impeach and undermine Sigler and that there was abundant corroboration of Sigler that would prove [M]ovant's guilt." *Id.* He alleges further that the plea offer and Diaz's advice were not confirmed by emails or letters. *Id.*

The Magistrate Judge concluded that Movant is not entitled to relief on Ground One, as the relevant testimony from Diaz and his associate, Carlos Santisteban, Jr,. showed that Movant never intended to plead guilty. DE 55 at 32. While Movant testified that he was repeatedly told that he had a defensible case, the Magistrate Judge found his testimony contradicted by emails that he received in February 2014, wherein his counsel "strongly recommended" that Movant accept the Government's plea offer. *Id.* Further contrary to Movant's testimony, the Magistrate Judge determined that Movant had always planned to go to trial because he believed that the Government

lacked evidence tying him to the alleged conspiracy. *Id.* at 33. The Magistrate Judge rejected Movant's testimony that had he known that Diaz represented Sigler in an unrelated forfeiture case, he would not have proceeded to trial and instead accepted the Government's final plea offer. *Id.* at 32. Finally, the Magistrate Judge concluded that all plea offers were conveyed to Movant. *Id.* at 33.

Movant raises several objections. First, he argues that the R&R "does not contest that if counsel had truthfully advised the Movant of the conflict of interest, the Movant would not have gone to trial and that the only reason Movant went to trial was because of his faith in the particular trial counsel he had hired." DE 58 at 7. This argument is unsupported by the record. The R&R *does* contest the matter, and the Magistrate Judge expressly found Movant's testimony on the matter non-credible:

> The Undersigned further finds Movant's testimony that, but for the fact that he was purportedly unaware that Diaz had previously represented Jose [Sigler] in an unrelated civil forfeiture case, he would not have proceeded to trial and would have accepted the Government's final plea offer lacks credibility. Thus, given the facts and evidence adduced at the hearings in this case, the Undersigned finds Movant's testimony implausible, incredible, and disingenuous.

DE 55 at 32. Furthermore, when reviewing the evidence *de novo*, it is apparent that Movant went to trial for reasons beyond his faith in Diaz. Although Diaz acknowledged that Movant had too much faith in him [DE 53 at 78], Diaz also stated that Movant always maintained his innocence and always wanted to go to trial. *Id.* ("He [Movant] made it clear from day one he wanted to go trial. He made it clear to me he was innocent. He kept that throughout."); *see id.* at 44 ("[T]his particular client [Movant] was adamant about innocence, adamant about wanting to go to trial. . . ."). When the Government offered Movant a deal that would have led to a sentencing guideline range of 70 to 87 months in prison, Diaz testified that he relayed the offer to Movant but knew he would decline because he believed he was innocent. *See id.* at 34-35 ("From my prior conversation

7

with [Movant], it was clear to me that he was not – we weren't authorized to take any deal . . . . This is like, you know, red lights, alarms, you know, it's important, it's an offer; even though you know [Movant's] going to say no to it. **He's told you he's not going to accept this deal. He told you he's innocent. He's insisting he wants to go to trial.**") (emphasis added).

While Movant suggests that he only went to trial because of his faith in Diaz, that position is undermined by his decision to reject the Government's 57-month offer, despite Diaz strongly recommending that he accept it. A Government exhibit reveals that on February 27, 2014, Diaz emailed Movant to memorialize the Government's 57-month offer, confirming that "I have presented this offer and we strongly recommended it to you," and confirming that "[y]ou have rejected this deal against our advice and we are therefore happy and ready to begin the trial on Monday." *See* DE 40-35. If Movant had the faith in Diaz as he suggests, it is more logical that he would have accepted the offer.

The caselaw cited by Movant does not persuade the Court otherwise. Movant cites *Wofford v. Wainwright* in support of his "interest in having, before he judge[d] the desirability of the plea bargain, a general knowledge of the possible legal consequences of facing trial." 748 F.2d 1505, 1508 (11th Cir. 1984). However, the record demonstrates that Diaz adequately advised Movant about the risks of trial. On February 12, 2014, Diaz emailed Movant to report on new discovery received from the Government, and to advise him that that his chances of prevailing were "slimmer than ever before," perhaps down to 20%. DE 40-23. Diaz told Movant that "the government will also try to introduce (and there will be a battle over) whether it is admissible that earlier that week you did a successful marijuana drug distribution with one of the co-conspirators." *Id.* Diaz also wrote that the Government had a new witness, "Bernard," who would be "finger-pointing with [Movant]." *Id.* Roughly one week later, Diaz and Movant met to discuss the Government's final

plea offer. DE 53 at 48. Diaz recalled it being a "real, real serious meeting" that lasted for around four hours. *Id.* And in the aforementioned email dated February 27, 2014, wherein Diaz strongly recommended that Movant accept the 57-month offer, Diaz wrote: "We also now believe you will likely have to testify to have a winning chance and thus, if you lose, we predict . . . your sentence will be between 15-20 year[s] of imprisonment." DE 40-35. Movant was thus aware of the consequences of rejecting the plea offer and proceeding to trial.

Movant also cites *O'Neal v. McAninch* to argue that the Magistrate Judge imposed too high a burden of proof and that Movant need only present evidence that leaves the Court in "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" DE 58 at 9 (citing *O'Neal*, 513 U.S. 432, 435 (1995)). But Ground One relates to Diaz's conduct during plea negotiations; thus, it is unclear how that conduct is relevant to the standard of "grave doubt" set forth in *O'Neal*, which applies to trial errors. Movant has not provided any authority suggesting that the *O'Neal* standard applies equally in the context of plea negotiations.

Movant also cites to *United States v. Williams*, wherein the Eleventh Circuit held that a defendant claiming ineffective assistance due to a conflict of interest must show an "actual conflict, i.e. a conflict that adversely affected his counsel's performance." 902 F.3d 1328, 1332 (11th Cir. 2018) (quotation marks omitted). An "adverse effect" exists if Movant can "point to some plausible alternative defense strategy or tactic that might have been pursued." *Id.* (quotation marks omitted). A strategy is "plausible" if it was reasonable under the facts. *Id.* Additionally, Movant "must show some link between the conflict and the decision to forgo the alternative strategy of defense." *Id.* at 1333 (quotation marks omitted). "In other words, he must establish that the alternative defense was inherently in conflict with or not undertaken due to . . . other loyalties or interests." *Id.* at 1333.

9

Despite citing *Williams*, Movant does not identify an alternative defense strategy that Diaz could have taken during plea negotiations, nor does he explain why such a strategy was plausible. Movant also fails to demonstrate a link between Diaz's past representation of Sigler and his decision to forego any alternative strategy during plea negotiations; on this final point, it is unclear how Movant could have made the requisite showing, since Diaz testified that he did not recognize Sigler during the criminal proceedings. *See, e.g.*, DE 53 at 57 ("[Ms. Acosta]. And at any time, did you recognize that name, 'Jose Sigler'? [Mr. Diaz]. No.").

Movant lastly argues that he satisfies the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). To show that counsel was ineffective, Movant must establish (1) that his counsel's performance was deficient, and (2) a reasonable probability that counsel's deficient performance prejudiced the defense. *Id.* at 687. To demonstrate deficient performance, Movant must show that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quotation marks omitted). To show prejudice regarding the rejection of a plea offer, Movant must show a reasonable probability that but for counsel's ineffectiveness:

> (1) the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Osley v. U.S.*, 751 F.3d 1214, 1222 (11th Cir. 2014) (quotation marks omitted).

Movant argues that an attorney is required to advise his client of conflicts of interest, and that Diaz's failure to check for conflicts of interest satisfies the first *Strickland* prong. DE 58 at 9-10. He then argues that Diaz's failure affected Movant's plea decision, since Movant would have accepted the offer, and thus the second prong is likewise satisfied. *Id.* at 10. Movant says that "the

10

fact that a person is willing to roll the dice when he has trust in counsel cannot be used to assume that he will roll loaded dice given to him by conflicted counsel." *Id.* at 11.

Even assuming that Diaz's performance was deficient when failing to inform Movant that he previously represented Sigler, Movant has not shown that Diaz's performance was prejudicial. For the reasons discussed above, the Court does not find credible the Movant's testimony that he would have accepted the Government's plea offer had he known that Diaz represented Sigler. The record clearly supports that it always was Sigler's plan to reject all plea offers and proceed to trial because of his faith in Diaz and his belief that he was innocent. While Movant now insists otherwise, a "conclusory after-the-fact-assertion that he would have accepted a guilty plea, without more, is insufficient to demonstrate an entitlement to relief." *Teers v. United States*, 739 F. App'x 960, 966 (11th Cir. 2018) (quotation marks omitted); *see Osley*, 751 F.3d at 1224 ("Osley's claim that he would have pled guilty had he been properly informed is also undermined by his repeated claims of innocence."); *see also Rosin v. U.S.*, 786 F.3d 873, 878-79 (11th Cir. 2015) (no prejudice where plaintiff refused to accept responsibility and maintained his innocence at all stages of his criminal proceedings). Consistent with the Magistrate Judge's conclusion, the Court does not find Movant's testimony on this matter credible.[2]

    c. *Ground Two*

In Ground Two, Movant argues that Diaz violated his Sixth Amendment right to counsel due to Diaz's conduct during trial. DE 7 at 5. Because Diaz successfully defended Sigler in a forfeiture action related to Sigler's drug dealing, he had a basis for impeaching Sigler during Movant's criminal trial. *Id.* But Diaz was burdened by a conflict of interest, and thus he did not

---

[2] Movant argues that even if Diaz could have served as his trial counsel despite previously representing Sigler, "the Constitution and Florida Bar rules would require a knowing and intelligent waiver." DE 58 at 12. Yet Movant does not indicate what specific provisions in these authorities establish such a requirement. Lacking specific authority, the Court finds Movant's argument unpersuasive.

meaningfully confront Sigler on cross-examination. *Id.* Doing so would have undermined the Government's theory and demonstrated that Movant was not involved in Sigler's prior drug dealings. *Id.*

The Magistrate Judge concluded that Movant is not entitled to relief on Ground Two. She noted that Diaz conducted an extensive cross-examination of Sigler during Movant's trial that spanned more than 100 pages. DE 55 at 38. She stated that Movant had not identified any portion of the cross-examination during which Diaz was ineffective or deficient. She stated further that "Movant cannot demonstrate that counsel was ineffective for failing to 'open the door' to questioning [Sigler] regarding his prior drug trafficking ventures, especially as it would have elicited testimony implicating Movant in at least one of those prior offenses." *Id.* The Magistrate Judge thus concluded that Diaz was not operating under an actual conflict of interest. *Id.*

Movant objects and states that "the decision not to prove that Sigler was lying to the government about his drug dealing, including what counsel knew of Sigler's lies . . . is a clear actual conflict." DE 58 at 13. He states that the Magistrate Judge "misconstued [sp] the evidence regarding trial counsel's failure to cross-examine the former client: the relevant question is whether the conflict existed, not whether counsel admitted it, and the decision to forego examination on the matters at issue in the prior representation constitutes an adverse impact." *Id.* at 14.

Movant's objections are unpersuasive. In conclusory fashion, he argues that Diaz's failure to cross-examine Sigler about the prior representation constitutes both an adverse impact and an actual conflict. He states that the Magistrate Judge misinterpreted "the evidence" but does not specify the relevant evidence on which he relies. On these grounds, Movant's objections are rejected. And, when viewing the record *de novo*, the Court agrees with the Magistrate Judge's conclusion that Diaz was not operating under an actual conflict. During the February 5, 2020

12

hearing, Diaz provided a cogent and credible explanation for why he decided to cross-examine Sigler in the manner that he did, including to avoid the Government implicating Movant:

> [Ms. Acosta]. Now did you have any concern about the questioning on cross, as far as to information that might come out if the door was – what we say, if the door was opened?
>
> [Mr. Diaz]. Right. So, one of the things that I was trying to do with Sigler was – I remember, and I remember looking at the transcript – was to show what [a] great break he got, because even though in this case it was a 19-kilo case.
>     This guy [Sigler] had been a player for a long time, made a lot of money, and there were, you know, a lot of prior loads, as opposed to what they could say against [Movant].
>     So what I'm hoping to do is to get the jury to see that this guy, if we charge him with all those crimes and consecutive sentences, he's launched out of the universe, and he's going to walk out of here. You try to do that to impeach him.
>     So I wanted to expose, it's called, the past that he got, for all of these prior drug loads. But then . . . on second thought, the Government let us know that, if so, he was going to implicate [Movant] in those.
>     So, at that point . . . you got to decide, do I want to take the good with the bad, do I think I have enough with this witness, to back off and lay off with that.
>     And then, if see, we were able to do it with defense counsel . . . instead of me, and it was done purposefully.
>     And so the judge was very clear – there's a record – he said, Look, I don't think you opened the door so far, if you back off, and then there was a very circumspect – and [Judge] Hurley almost told co-counsel how to ask the question and cautioned the Government to make sure that they didn't open the door.
>     And I felt – that was a strategy decision to make. . . . And that was the decision that I made; and even [] today, I think it was the right decision. . . .
>
> [Ms. Acosta]. Okay. And during your cross-examination, does Sigler open the door to allowing you to go through now and start mentioning the fact that he has a past. Does that happen during your cross?
>
> [Mr. Diaz]. Not with regards to the drug loads. It was – I did go and I kind of navigated carefully, but not stepping on to or over the line about the [wealth] that he had accumulated in all the things that he had owned and possessed, so the jury could say this wasn't the first and only time that he did this, so I tread a very careful line. . . .
>
> [Ms. Acosta]. Well, did the jury ever hear that he [Sigler] had engaged in prior loads with [Movant]?
>
> [Mr. Diaz]. I don't think so. I think we were able to keep that out by stepping back. . . .

13

DE 53 at 58-61. The foregoing illustrates that Diaz's strategy during trial was thoughtful and calculated. His decision to not cross-examine Sigler more aggressively was motivated by his interest in protecting Movant. Diaz also believed that his co-defense counsel could elicit the relevant testimony from Sigler. While Movant insists that Diaz's strategy was due to his prior representation of Sigler, the record evidence does not support that position. In addition to the foregoing testimony, that Diaz did not recognize Sigler on the day that he testified further undercuts Movant's objection. Movant has therefore failed to show that Diaz's performance was deficient or that he acted under an actual conflict.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. The Court **ADOPTS IN PART AND DECLINES TO ADOPT IN PART** the Report and Recommendation [DE 55].

2. Movant's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [DE 7] is **DENIED.**

3. A certificate of appealability **SHALL NOT ISSUE**; and,

4. The Clerk of the Court is instructed to **CLOSE THIS CASE.**

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 10th day of August, 2021.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Movant; Counsel of Record